UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------

In re:

TRI-VALLEY CORPORATION, *et al.,*[1]          Chapter 7

                                 Debtors.          Case No. 12-12291 (MFW)

---------------------------------------------------------

CHARLES A. STANZIALE, JR., in his
capacity as the Chapter 7 Trustee of Tri-Valley
Corporation, *et al.,*

                                 Plaintiff.          Adv. Pro. No. 14-50627 (MFW)

                v.                          **JURY TRIAL DEMANDED**

Baker Hughes, Inc.,

                                 Defendant.

---------------------------------------------------------

**DEFENDANT'S REPLY BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**CROSS & SIMON, LLC**                    **MEYER, SUOZZI, ENGLISH
                                          & KLEIN, P.C.**
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901       Thomas R. Slome (admitted pro hac)
Wilmington, DE 19801                      Howard B. Kleinberg (admitted pro hac)
Telephone: (302) 777-4200                 990 Stewart Avenue
Facsimile: (302) 777-4224                 P.O. Box 9194
csimon@crosslaw.com                       Garden City, New York 11530
                                          Telephone:  516-741-6565
                                          Facsimile:  516-741-6706

                                          *Co-Counsel to Baker Hughes, Inc.*

---

[1] The Debtors in these cases are: Tri-Valley Corporation, Tri-Valley Oil & Gas, Co., and Select Resources Corporation, Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.    Preliminary Statement................................................................................1

II.    Undisputed Facts....................................................................................2

III.    Argument ...........................................................................................3

    A.    The Trustee Has Failed To Prove The Element of A
        Preference Found in 11 U.S.C. § 547(b)(5)...................................3

        1.    Baker Hughes Had A Lien On The
             Debtor's Property Pre-Petition......................................4

        2.    The Question of Whether Baker Hughes
             Was Secured or Unsecured is a Red Herring...................5

        3.    The Cases Relied Upon By The Trustee Are
             Contrary To The Plain Meaning of the Bankruptcy
             Code And/Or Are Distinguishable..................................6

    B.    Baker-Hughes Has Established That The Alleged Preferential
        Payments Are Subject To The Contemporaneous Exchange
        For New Value Defense..........................................................10

  Conclusion ...........................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*,
  416 F.3d 394 (5th Cir. 2005) ...............................................................................10

*Giles v. Cal.*,
  554 U.S. 353 (2008)............................................................................................10

*Lewis v. Custom Heating Co. (In re Joseph M. Eaton Builders, Inc.)*,
  84 B.R. 56 (Bankr. W.D. Pa. 1988) ......................................................................9

*Lewis v. Diethorn*,
  893 F.2d 648 (3rd Cir. 1990) ..............................................................................12

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)............................................................................................10

*Official Comm. of Unsecured Creditors of 360Networks (USA) Inc. v. AAF-
  McQuay, Inc. (In re 360Networks (USA) Inc.)*,
  327 B.R. 187 (Bankr. S.D.N.Y. 2005) ..............................................................5, 11

*Orson, Inc. v. Miramax Film Corp.*,
  79 F.3d 1358 (3d Cir. 1996)..................................................................................2

*Precision Walls, Inc. v. Crampton*,
  196 B.R. 299 (E.D.N.C. 1996)..............................................................................9

*Reaves v. Fremont Valley Dev. Corp.*,
  229 Cal. App. 2d 13 (Cal. Ct. App. 1964) ............................................................5

*Ryan v. Grayson Serv., Inc. (In re Rincon Island Ltd. P'shp.)*,
  253 B.R. 880 (Bankr. C.D. Cal. 2000)..................................................................8

*In re Sentinel Mgmt. Group, Inc.*,
  728 F.3d 660 (7th Cir. 2013) ..............................................................................10

*Sparkman v. American Residential Services, LLC (In re Anderson Homes, Inc.)*,
  2012 WL 1906441 (Bankr. E.D.N.C. May 25, 2012).......................................6, 7, 9

*U.S. v. Fisher*,
  421 F. Supp. 2d 785 ...........................................................................................10

*United Rentals, Inc. v. Angell*,
  592 F.3d 525 (4th Cir. 2010) ................................................................................7

**Statutes**

11 U.S.C. § 547(b)(5) ...........................................................................................................3, 5, 7, 9

11 U.S.C. § 547(g) ........................................................................................................................2

Cal. Civ. Proc. Code §1203.56 .................................................................................................8, 11

California Oil & Gas Act .........................................................................................................10, 11

**Other Authorities**

47 Cal. Jur. 3d Oil & Gas § 147.................................................................................................8

Defendant, through counsel, submits this reply brief (the "Reply Brief") in response to Trustee's Brief in Opposition to Defendant's Motion For Summary Judgment (the "Opposition Brief") and in further support of its Motion for summary judgment dismissing the above-captioned adversary proceeding.[2]

# I.

## PRELIMINARY STATEMENT

In its Opposition Brief, the Trustee does not raise any issue with respect to the Defendant's "Statement of Facts."  Indeed, he recites many of those same facts in the "Statement of Facts" in his Opposition Brief.  Likewise, the Defendant does not take issue with the *facts* set forth in the Trustee's Statement of Facts (it does take exception to the Trustee's incorrect legal assertion at the very end of his Statement of Facts that oil and gas liens attach to the Debtor's property only "upon perfection").  Thus, no factual dispute exists here to preclude summary judgment.

Accordingly, the following two issues are ripe for determination by the Court as a matter of law:  (a) whether the Trustee has failed to establish a required element of his *prima facie* case, namely that the Defendant, by receiving payments on the Invoices during the preference period, received more than it would have received in a hypothetical chapter 7 liquidation, and (b) whether the Defendant has established its affirmative defense that the payments on the Invoices were intended by the Debtor and Baker Hughes to be, and were in fact, contemporaneous exchanges for new value in the form of the simultaneous release of liens held by Baker Hughes on the Debtor's leasehold interests in certain California oil wells.

---

[2] Capitalized terms used in this Reply Brief not otherwise defined have the meanings assigned to them in Defendant's Opening Brief In Support of Motion for Summary Judgment (the "Opening Brief").

If the Trustee has failed to carry his burden of proof on the first question, as he must under 11 U.S.C. § 547(g), then the Defendant is entitled to summary judgment dismissing this adversary proceeding.  Independently, if the Defendant has carried its burden on its affirmative defense, it is entitled to summary judgment.[3]

## II.

## UNDISPUTED FACTS

Although the facts are undisputed, a short recitation of such facts should help the Court dispose of the Trustee's arguments that the Defendant is not entitled to summary judgment dismissing the adversary proceeding.

The Invoices which are the subject of the Complaint were in fact paid prior to the Petition Date, and during the preference period.  With one small exception, they relate to the same leasehold interests that were the subject of the Oil and Gas Lien Payment Motion and subsequent Oil and Gas Lien Payment Order.[4]  Baker Hughes has established in its Motion that had these Invoices not been paid, it would have filed lien statements as it did for its unpaid invoices, and

---

[3] As noted in the Defendant's Opening Brief at page 2, footnote 2, Defendant has "ordinary course" and "subsequent new value" defenses which, independently, should also result in the dismissal of this adversary proceeding, but which would be rendered moot if Defendant is entitled to summary judgment on either of the two bases asserted in the Motion.

[4] The one small exception relates to the fact that the Oil and Gas Lien Payment Motion appears not to have covered the Debtor's oil wells for the "Webb Trust Lease" in Contra Costa County, California, to which a de minimus amount of the alleged preference payments relate, specifically $593.33.  As explained in the Opening Brief, at pages 5-7, it is the Trustee's burden to prove that Baker Hughes' receipt of such $593.33 permitted it to receive more than it would have had the Debtor's assets been liquidated in a hypothetic Chapter 7.  In light of the undisputed facts that substantial assets of the Debtor were sold and the proceeds were used to satisfy O&G Liens of suppliers, including Baker Hughes, with proceeds being "well in excess" of such liens and all other liens, the Trustee was required to produce evidence that such de minimus amount would also not have been paid out of an asset sale.  *See, e.g., Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir. 1996) ("When the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the nonmoving party has not offered evidence sufficient to establish the existence of an element essential to the case." (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986))); *see also* Opposition Brief at 3 ("when the nonmoving party bears the burden of persuasion at trial, the moving party 'may meet its burden … by showing that the nonmoving party's evidence is unsufficient to carry that Burden.'").

the Invoices would have also been paid pursuant to the Oil and Gas Lien Payment Order.[5]   The Trustee presents no evidence to counter the Defendant's evidence that it would also have been paid in full for the Invoices had they not been paid (*i.e.*, the Baletka Cert. and its exhibits submitted as part of the Motion and the exhibits from the Court's docket attached to the Opening Brief), as is the Trustee's obligation under the Bankruptcy Code; and, in any event, the Trustee did not even attempt to explain why the Invoices would not have been paid in full from the liquidation of the Debtor's assets when Baker Hughes' other, unpaid invoices, were paid from those same assets.

## III.

## ARGUMENT

### A.    The Trustee Has Failed To Prove The Element of A Preference Found in 11 U.S.C. § 547(b)(5)

The Trustee ignores pertinent underlying facts and evidence of Baker Hughes' relationship with the Debtor and the Debtor's Chapter 11 case, and relies on case law that:  (a) is readily distinguishable because the applicable state statute either (i) did not create a lien on the debtor's property at the time the goods or services were provided, as does California law, or (ii) imposed a lien only on the very goods sold, which lien was lost once such goods were no longer in the possession of the debtor; and/or (b) holds contrary to the great weight of authority that preference period payments where defendants *had or could have obtained statutory liens*, which

---

[5] Prior to the Petition Date, Baker Hughes provided certain goods and services to the Debtor's leasehold interests in oil and gas properties located in California unrelated to this adversary proceeding.  The invoices for such goods and services remained unpaid as of the Petition Date.  Baker Hughes was paid for these goods and services after the Petition Date pursuant to the Oil and Gas Lien Payment Motion, in which the Debtor recited that its leasehold interests to which the unpaid invoices related, were sold for "well in excess of the total amount of all O&G liens and other liens…."  Because these Baker Hughes invoices were *unpaid* as of the Petition Date, Baker Hughes thereafter filed, on a timely basis under California law, "lien statements" and received payment in full, plus interest, during the bankruptcy case.

liens would have been satisfied during the bankruptcy proceedings, are not avoidable preferences.

1.    **Baker Hughes Had A Lien On The Debtor's Property Pre-Petition**

As explained in the Opening Brief, the California oil and gas lien "arises on the date of the furnishing of the first item of material or services…" (Opening Brief at 9), and such lien extends to the "leasehold for oil or gas purposes to which the materials or services were furnished…." Opening Brief at 8.

The Trustee nevertheless attempts to argue that Defendant's oil and gas liens were not created as of the date the goods and services were furnished.  But he ignores the plain language of the applicable California statute and conflates the concepts of having a lien with perfection of a lien.  *See* Opposition Brief at 5 ("no perfected, enforceable lien under California's Oil and Gas Act arose").

Likewise, the Trustee argues that Baker Hughes was "not the holder of a perfected security interest at the time it received the payment -- it was an unsecured creditor."  Opposition Brief at 5. Under California Law, however, Baker Hughes was indeed a secured creditor (i.e., it had a lien as the Oil and Gas Lien Act plainly states), which could later be perfected by recording a statement of lien:

> The lien provided for in this chapter arises on the date of the furnishing of the first item of material or services or the date of performance of the first labor for which a lien is claimed under the provisions of this chapter.

Opening Brief at 9 (citing Cal. Code Civ. Proc. § 1203.58).  The Trustee's attempt to equate when an oil and gas lien arises under California law with perfection of such a lien is without any

support in the statute and must fail.[6]

Thus, the Trustee's suggestion that Baker Hughes had no lien securing the Invoices at the time it was paid is plainly contrary to law.

### 2. The Question of Whether Baker Hughes Was Secured or Unsecured is a Red Herring

Although Baker Hughes did in fact have a lien, and was thus a secured creditor, the application of the plain language of the Bankruptcy Code to this case need not involve labels like "secured" or "unsecured," terms not defined in the Bankruptcy Code. The language of 11 U.S.C. § 547(b)(5) does not mention anything about "secured," "unsecured" or "perfection." It inquires quite clearly as to a fairly simple question: Would the creditor have gotten paid from the debtor's assets in the bankruptcy?

The answer to this question, on the undisputed facts here, is a resounding yes. The Trustee cannot dispute or present evidence to counter the fact that had the Invoices not been paid when they were, they would have been paid during the bankruptcy, including pursuant to the Oil and Gas Lien Payment Order. The plain meaning of the statute and simple logic are why virtually all the cases on point support the Defendant's position in the Motion, and they do so

---

[6] The Trustee also suggests that Baker Hughes could have filed a statement of lien (*see* Opposition Brief at 7) in order to perfect its liens. Not only is perfection not required to create a lien under the California statute, the assertion ignores reality and common sense. By virtue of the Debtor's payment of the Invoices, the claims secured by the liens were satisfied and there was no longer any need (or requirement) for Baker Hughes to file any statement of lien. Very much to the contrary of the Trustee's assertion that the automatic stay did not prevent any such filing, Judge Carey of this Court has ruled that filing a statement to perfect a statutory lien in such circumstances not only violates that automatic stay, but for strong policy reasons must be prohibited. *See* Opening Brief at 12 and Exhibit 5, at pages 25-27. Filing such a statement could also be prohibited by applicable state law. *See, e.g., Official Comm. of Unsecured Creditors of 360Networks (USA) Inc. v. AAF-McQuay, Inc. (In re 360Networks (USA) Inc.),* 327 B.R. 187, 192 (Bankr. S.D.N.Y. 2005) ("A holder of an inchoate statutory lien cannot perfect the lien after accepting payment in satisfaction of the underlying claim."); *Reaves v. Fremont Valley Dev. Corp.,* 229 Cal. App. 2d 13, 24 (Cal. Ct. App. 1964) (mechanic's lienor has no right to file a statement of lien after payment in full).

regardless of when the applicable statute provides for the lien to arise.  *See* Opening Brief at 10-13.

>    **3.      The Cases Relied Upon By The Trustee Are
>            Contrary To The Plain Meaning of the
>            <u>Bankruptcy Code And/Or Are Distinguishable</u>**

The Trustee relies on a handful of decisions in which the courts did not apply the plain meaning of the statute or applied state statutes which (a) did not clearly provide for a lien at the time the goods were furnished, or (b) limited the lien to the specific goods furnished, and only if they could be identified as being in the debtor's possession.

The first decision cited by the Trustee, *Sparkman v. American Residential Services, LLC (In re Anderson Homes, Inc.)*, 2012 WL 1906441, at \*5 (Bankr. E.D.N.C. May 25, 2012), essentially rejects the very hypothetical analysis the Bankruptcy Code requires under Section 547(c)(1) and derisively labels it "'hypothetical guesswork."  The *Sparkman* court rejected the notion that it should have to determine whether or not the defendant would have been paid out of the proceeds of a sale of the debtor's assets.  *Id.* at \*5.  This exercise is, however, precisely what the statutory language requires a trustee to prove, and why this element of the Trustee's case is commonly referred to as "the hypothetical chapter 7" test.  *See* 5 Collier on Bankruptcy ¶ 547.03[7] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (The section is entitled, "Resulting in Greater Distribution Than Hypothetical Chapter 7 Distribution").  Collier explains:

> Specifically, the trustee must prove that the creditor received more than it would have received if the case were a chapter 7 liquidation case, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the provisions of the Code.

*Id*.

Interestingly, the *Sparkman* court labelled the cases relied upon by the defendant there (two of the same cases relied upon by the Defendant here), "a solid contingent of persuasive

6

precedent" and having "common sense appeal," but felt constrained because it believed itself

bound by its circuit court's Section 547(c)(1) decision in *United Rentals, Inc. v. Angell*, 592 F.3d

525 (4th Cir. 2010).  *See Sparkman,* at *5-6.  In *United Rentals,* which the Trustee also relies

upon, the Fourth Circuit declined to consider certain complex hypothetical facts -- but only in

connection with the defendant's *contemporaneous new value defense* and involving a third-party

bonding company and what it and defendant would have done in a series of transactions had the

preference payment not been made.  592 F.3d at 532-33.  The circuit court emphasized that the

defendant had the burden of proof on his affirmative defenses and, unlike here (*see*, Baletka Cert.

at 3), the defendant there had produced no evidence of what would have occurred.  *Id.* at 533.

And, the case here does not include a complex three-way bonding transaction.

Importantly to the first prong of this Motion, in *United Rental*, the Fourth Circuit

expressly did not consider the 547(b)(5) argument that had the payment not been made the

defendant would "have promptly filed lien claims and thereby attained secured-creditor status

such that it could have obtained full payment in a hypothetical Chapter 7 bankruptcy."  *Id.* at

534.  The court said that whether the defendant was correct would have to "wait for another case

in which the issue is properly preserved. . . . . because United raised it for the first time on

appeal."  *Id*.  Of course, Baker Hughes is advancing that very argument here.

*United Rental* is also distinguishable based on the specific North Carolina statute

involved.  In addressing the defendant's Section 547(c)(1) new value defense, the Fourth Circuit

interpreted the mechanic's lien statute as conferring:  "*a right to file a claim of lien* on real

property" and that such a lien "shall relate to and take effect from the time of the first furnishing

of labor or materials. . . ."  *Id.* at 533-34 (emphasis added), and thus ruled that, "Because United

had not filed such a claim when the transfers were made, no interest had been transferred to

United and United had no such interest to release.".  *Id.* at 534.  But under California law, the

7

"lien provided for in this chapter arises on the date of the furnishing of the first item of material or services."  Cal. Civ. Proc. Code §1203.56; *see* Opening Brief at 9.  The statute continues to make clear that compliance with the recording requirements results in the lien having preferences to subsequent liens -- it does not tie perfection notices to the creation of the lien as does the Fourth Circuit's construction of the North Carolina statute.  *See id.*

Indeed, the California bankruptcy court decision cited by the Trustee, which does not relate to the issues of this case but does contain certain language explaining the state's oil and gas liens, strongly supports the position that Baker Hughes had a lien pre-petition.  In *Ryan v. Grayson Serv., Inc. (In re Rincon Island Ltd. P'shp.)*, 253 B.R. 880, 884 (Bankr. C.D. Cal. 2000), the bankruptcy court explained how, if certain actions are not taken to enforce the lien within a certain time period, "the lien *becomes* void."  (emphasis added).  The court's language indicates that a lien existed prior to enforcement.  *See* Cal. Civ. Proc. § 1203.56; 47 Cal. Jur. 3d Oil & Gas § 147 ("The lien provided for by the Oil and Gas Lien Act *arises* on the date of the furnishing of the first item of material or services or the date of performance of the first labor for which a lien is claim under the provisions of the act.") (emphasis added).  Further, under the statutory language the recordation of the lien does not serve to create the lien, but merely provides the lienholder with priority over other creditors of the debtor.  *See* Cal. Civ. Proc. § 1203.56 ("Upon compliance with the provisions of [the act requiring recordation of the lien], such lien shall be preferred to all other titles, charges, liens or encumbrances which may attach to or upon any of the property upon which a lien is given by this chapter *subsequent to the date the lien herein provided for arises*.") (emphasis added); 47 Cal. Jur. 3d Oil & Gas § 147 (same).[7]

---

[7] But again, as discussed above in Section A.2, although Baker Hughes did in fact have a lien under California law prior to the Petition Date, and thus was a "secured creditor," Baker Hughes would still be entitled to summary judgment even if it did not have a lien when payment was made.  The last element of a preference is not dependent on whether the recipient of a payment was secured or not, it is dependent

The Trustee cites two other cases in support of his flawed secured/unsecured analysis. One, another case involving North Carolina law, is similar to *Sparkman* discussed above, both in terms of the applicable North Carolina statute and the absence of any reasoned application of the language of Section 547(b)(5). *See Precision Walls, Inc. v. Crampton*, 196 B.R. 299, 303 (E.D.N.C. 1996) (ruling that because notice of lien was never filed, defendant was an unsecured creditor). Finally, the last case cited by the Trustee, *Lewis v. Custom Heating Co. (In re Joseph M. Eaton Builders, Inc.)*, 84 B.R. 56, 58 (Bankr. W.D. Pa. 1988), is also inapposite for the reasons that it held, under Pennsylvania law, that a mechanic's lien was not created until compliance with the recording requirements. Further, in *Lewis*, the court found that the time to file a notice *had lapsed prior to payment* and thus any lien rights had been extinguished prior to the alleged preference payment. *Id.* at 58-59.

The Trustee acknowledges that there is significant case law in support of the Defendant's position, but he attempts to deflect its well-grounded logic with his incorrect assertions that Baker Hughes is advancing an "equitable defense" and that defenses to preference liability are limited to express statutory and procedural defenses. Opposition Brief at 8. Even assuming the Trustee's view of the latter general principle is correct, his argument misses the mark of Baker Hughes' defense and the reasoning of the many cases that support it. Baker Hughes and its supporting cases all rely on the plain language of Section 547(b)(5) of the Bankruptcy Code and the logical application of such language to a set of facts where payment during the preference

---

only on whether the recipient would have received the payment in a hypothetical Chapter 7 liquidation. The Trustee ignores the actual evidence in this case, the Defendant's certification and the circumstances of the sale of the Debtor's assets, and presents not a scintilla of evidence even suggesting that Baker Hughes would not have been paid for the Invoices -- indeed, he never even makes such an assertion, and it would be manifestly contrary to the facts, especially given what occurred with the unpaid Baker Hughes invoices.

period did not enable the creditor to receive more than it would have in a hypothetical chapter 7 case.[8]

**B.      Baker-Hughes Has Established That The Alleged Preferential Payments Are Subject To The Contemporaneous Exchange For New Value Defense**

Although not necessary for the Court to decide if summary judgment is granted for the reasons stated above, the undisputed facts also establish that the alleged preference payments are not avoidable because the payment of the Invoices were intended by the Debtor and Baker Hughes to be a contemporaneous exchange for new value given to the Debtor and were in fact substantially contemporaneous.

The only evidence before the Court is that the alleged preferential transfers repaid the Invoices secured by the oil and gas liens, and that the satisfaction of the lien was not only contemporaneous with payment, but simultaneous -- indeed, it was instantaneous.  The evidence of such simultaneous lien satisfaction, particularly in the absence of any evidence from the Trustee to the contrary, is sufficient evidence that the Debtor and Baker Hughes each intended the payment and resulting release of lien to be contemporaneous.[9]

---

[8] The Trustee overstates the holding of *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394 (5th Cir. 2005).  *Ramba* involved a Louisiana oil and gas statute that the court held limited the supplier's lien *to the property sold* (*i.e.*, not the entire leasehold interest as under the California Oil & Gas Act).  416 F.3d at 402.  Further, the *Ramba* court held that under Louisiana law, for the lienholder to maintain its lien, the property must remain in the possession of the debtor and must remain identifiable at the time of the alleged preferential payment.  *See id.*  The *Ramba* court cited to evidence that the goods of the type sold by the defendant generally were in turn sold by the debtor within a month of coming into its possession, and the payment in question occurred more than four months after the debtor's purchase of the goods in question from the defendant.  *See id.*  Thus, the *Ramba* court merely found that evidence was lacking that the defendant actually had  or could obtain a statutory lien on the debtor's property at the time of the transfer.

[9] *See Giles v. Cal.*, 554 U.S. 353, 385 (2008) ("A man who performs an act which it is known will produce a particular result is from our common experience presumed to have anticipated that result and to have intended it." (internal quotations omitted)); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) (A person is presumed to intend the natural consequences of his acts.); *In re Sentinel Mgmt. Group, Inc.*, 728 F.3d 660, 667 (7th Cir. 2013) ("In our legal system, 'every person is presumed to intend the natural consequences of his acts.'"); *cf. U.S. v. Fisher*, 421 F. Supp. 2d 785, 795 (Under Delaware law there is rebuttable presumption that a person is presumed to intend the natural and probable consequences of his acts.).

Ironically, the Trustee relies on *Official Comm. of Unsecured Creditors of 360Networks (USA) Inc. v. AAF-McQuay, Inc., (In re 360Networks (USA) Inc.)*, 327 B.R. 187 (Bankr. S.D.N.Y. 2005), to argue against the Defendant's contemporaneous new value defense, while rejecting its holding in connection with the main prong of the Motion. *360Networks* is, however, factually distinguishable from this case with respect to the contemporaneous new value defense. A careful reading of the decision shows that there was no undisputed fact relied upon by the court to the effect that any defendant had an interest in the debtor's property (*i.e.*, an actual lien) at the time of the payment, as opposed to merely the right to perfect a statutory mechanic's lien:

> Each of the Defendants asserts that it has a complete defense to the complaint on the ground that at the time it was paid by one of the Debtors, *it had the right to perfect a statutory mechanic's lien* that would have immunized the payment from preference attack. . . .

326 B.R. at 188-89 (emphasis added). Nowhere in the opinion does it say that any defendants had an actual lien at the time of payment or had even made such an argument. The New York mechanic's lien statute quoted by the court speaks in terms of the lien arising "upon the completion of construction or building-related services" and not immediately upon furnishing of goods or services as is the case under the California Oil & Gas Act. *Id*. at 189; *see* Cal. Civ. Proc. § 1203.56. Nowhere in the decision is the question of whether the defendants had interests in the debtor's property discussed, let alone decided. Not surprisingly, therefore, the court never addressed whether the extinguishment of an actual lien can constitute new value, and focuses entirely on "whether release of the right to perfect a statutory lien is" new value. *Id.* at 192.

If all that Baker Hughes had was a right to perfect a mechanic's lien, and not an actual lien as California law provides, the new value reasoning of *360Networks* might arguably apply to the second prong of the Motion. Forbearance from obtaining payment or obtaining a lien might not constitute new value, but release of a lien on the debtor's property surely does. *See Lewis v.*

11

*Diethorn*, 893 F.2d 648, 650-51 (3rd Cir. 1990) (payment's result of lifting of encumbrance caused by *lis pendens* both negated last element of plaintiff's 547(b) case *and* constituted new value).  The Opening Brief also relies on several other well-reasoned decisions, each holding that payment and resulting release of statutory liens not perfected at the time of payment constitutes a contemporaneous exchange for new value.  Opening Brief at 14-16.

## **CONCLUSION**

WHEREFORE, the Defendant respectfully requests that this Court submit to the District Court proposed findings of fact and conclusions of law consistent with the undisputed facts set forth above, in the Opening Brief and the Opposition Brief, and the legal principles set forth in the Opening Brief and this Reply Brief, and further recommend to the District Court that it grant Defendant's Motion for Summary Judgment dismissing the claims asserted by the Trustee in this adversary proceeding.

Dated:   December 31, 2014                    **CROSS & SIMON, LLC**

By: */s/ Christopher P. Simon*
        Christopher P. Simon (No. 3697)
        1105 North Market Street, Suite 901
        Wilmington, DE 19801
        Telephone: (302) 777-4200
        Facsimile: (302) 777-4224
        csimon@crosslaw.com

        - and –

        **MEYER, SUOZZI, ENGLISH
        & KLEIN, P.C.**
        Thomas R. Slome (admitted pro hac)
        Howard B. Kleinberg (admitted pro hac)
        990 Stewart Avenue
        P.O. Box 9194
        Garden City, New York 11530
        Telephone:  516-741-6565
        Facsimile:  516-741-6706

        *Co-Counsel to Baker Hughes, Inc.*

12

1031946